| | |
|---|---|
| MICHAEL L. KREMBEL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **ORDER** |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendants. | ) |

This matter is before the court upon Defendant's motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1), failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), or alternatively, motion for judgment on the pleadings, pursuant to Fed. R. Civ. P. 12(c) ("motion to dismiss") [DE-15]. Also before the court is Defendant's motion to stay discovery pending the resolution of its motion to dismiss [DE-21]. For the following reasons, these motions are denied.

## I. Background

Plaintiff, a federal inmate represented by counsel, has filed a complaint pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680. In his complaint[1], Plaintiff contends that, on or about June 6, 2013, he was transferred from the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix") to the Federal Medical Center in Butner, North Carolina ("FMC Butner"). Compl. [DE-1] ¶ 6. Plaintiff has been diagnosed with squamous cell carcinoma, and

---

[1] At this stage of the proceedings, the court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff." Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

received treatment for that condition, including surgery, while he was incarcerated at FCI Fort Dix. Id. ¶ 7.

After his transfer to FMC Butner, Plaintiff had a consultation at the Duke University Medical Center ("DUMC") in Durham, North Carolina on July 8, 2013. Id. ¶ 9. The examining physician, Dr. Stanley Katz, indicated "[i]t is my strong opinion that the patient is a candidate for Mohs micrographic surgery[2] . . . This would be the true standard of care, and frankly due to the patient's good health and ability to tolerate such a procedure, I know nothing else that would be adequate other than this treatment." Id. ¶ 10. Dr. Katz "strongly recommended" that Mohs surgery be performed "as soon as possible." Id. Similarly, on July 9, 2013, Plaintiff consulted with several other health care providers, including a radiation oncologist. Id. ¶ 12. These providers also recommended Plaintiff for Mohs surgery. Id. ¶ 12. These recommendations were provided to Federal Bureau of Prisons ("BOP") officials. Id. ¶¶ 11, 13. On July 10, 2013 the FMC Butner Review Board approved the recommendation for MOHS surgery at Duke. Id. ¶ 14. However, despite Dr. Katz recommendation that the procedure be performed as soon as possible, the BOP did not schedule a consultation with the primary Mohs surgeon at DUMC, Dr. Jonathan Lambert Cook, until October 15, 2013. Id. ¶ 15. Following the October 15, 2013 consultation, Dr. Cook also agreed that Mohs surgery was necessary. Id. ¶ 16. He also opined that, given the size of the probable wound, plastic surgery would also be required. Id. As before, BOP officials were provided with Dr. Cook's treatment notes. Id. ¶ 17. On October 23, 2013, the review board at FMC Butner approved Plaintiff's plastic surgery reconstruction. Id. ¶ 18.

---

[2] Mohs surgery is a precise surgical technique used to treat skin cancer. During Mohs surgery, thin layers of cancer-containing skin are progressively removed and examined until only cancer-free tissue remains. www.mayoclinic.org/tests-procedures/mohs-surgery/basics/definition/prc-20014261 (last visited March 17, 2017).

2

Ultimately, Plaintiff contends, despite the urgent recommendations of several physicians and the approval of the FMC Butner review board, BOP officials failed to make arrangements to have Mohs surgery performed on Plaintiff. Id. ¶ 19. By the time Plaintiff received treatment, Mohs surgery was no longer considered feasible. Id. ¶ 20. Specifically, a DUMC radiation oncologist, Dr. Daniel Cuscela noted "the mass has . . . [grown] quite rapidly, exophytically and ulceratively with a crater and signs of an infectious process and drainage as well as necrosis [...] clinically he . . . is not a surgical candidate at this point." Id. As a result of this delay in treatment, Plaintiff asserts that he suffered permanent and severe injuries, including, *inter alia,* allowing his cancer to spread and negatively affecting his prognosis. Id. ¶ 31.

After exhausting his administrative remedies, Plaintiff filed the instant complaint on January 27, 2016, alleging that BOP officials negligently breached their duty to ensure he received adequate medical care. On August 15, 2016, Defendant filed the instant motion to dismiss [DE-15]. Plaintiff has responded to the motion [DE-24], and Defendant has filed a reply [DE-25]. Accordingly, these matters are ripe for adjudication.

## II. Discussion

Defendant first moves to dismiss Plaintiff's claims pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Under Rule 12(b)(1), Plaintiff bears the burden of establishing federal jurisdiction. See Fed. R. Civ. P. 12(b)(1); Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When a Rule 12(b)(1) motion attacks the complaint as failing to state facts upon which subject-matter jurisdiction may be based, the facts in the complaint are assumed to be true. Kerns, 585 F.3d at 192. Where the Rule 12(b)(1) motion attacks the existence of subject-matter jurisdiction, apart from the complaint, the court may weigh the evidence to determine the existence of jurisdiction. Id.

3

Defendant asserts that the court lacks subject-matter jurisdiction over Plaintiff's FTCA claim because he was injured by the act of an independent contractor. Specifically, Defendant argues that "[a]t all times relevant to the instant claim, the Federal Correctional Complex in Butner, North Carolina ("FCC Butner"), contracted with the University of Massachusetts Medical School ("UMASS") to provide comprehensive medical care to inmates housed at FCC Butner." Def. Mem. [DE-16], p. 2. The crux of Defendant's argument is that UMASS, rather than the BOP, is the party whose negligence injured Plaintiff. Id. at 14.

Under the FTCA, the United States waives sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a). A prisoner "can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 150 (1963) (footnote omitted). The waiver is limited, however, to acts of governmental employees, and does not extend to acts of independent contractors. See Logue v. United States, 412 U.S. 521, 526–30 (1973); Williams v. United States, 50 F.3d 299, 305–06 (4th Cir. 1995); Wood v. Standard Prods. Co., 671 F.2d 825, 829 (4th Cir. 1982).

Defendant argues that because UMASS was responsible for scheduling Plaintiff's treatment. Def. Mem. [DE-16], p. 14. Because UMASS is an independent contractor, Defendant contends it cannot be held liable for Plaintiff's medical treatment. The court disagrees, and in fact has rejected similar arguments. See Knowles No. 5:12-CT-3212-F (E.D.N.C. March 20, 2014) (denying motion to dismiss where a FTCA plaintiff alleged that the BOP "had taken too long to accept a [medical] consultation request", regardless of whether the medical care was ultimately provided by an independent contractor). Here, the fact that Plaintiff's care was ultimately provided by independent

4

contractors, or that independent contractors were responsible for scheduling appointments for the BOP is inapposite. The crux of Plaintiff's claim is that BOP employees failed to exercise the requisite care to sure that medically urgent procedures were promptly scheduled. Plaintiff has plausibly alleged facts concerning the alleged negligence of BOP employees to withstand the motion to dismiss. See Baker v. United States, 5:11-CT-3070-D, 2013 WL 211254, at * 4 (E.D.N.C. Jan. 18, 2013). Although a more fully developed record may reveal that UMASS was negligent and Defendant was not, the court is unwilling to reach that conclusion at this stage of the proceedings. Thus, Defendant's motion to dismiss Plaintiff's complaint pursuant to pursuant to Rule 12(b)(1) is DENIED.

Defendant also argues that Plaintiff's complaint should be dismissed pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Civil Procedure. When subjected to a Rule 12(b)(6) motion, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir.2008) (emphasis in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court in Twombly upheld a Rule 12(b)(6) dismissal because the complaint failed to allege facts sufficient to show a claim was plausible rather than merely conceivable. See Monroe v. City of Charlottesville, Va., 579 F.3d 380, 386 (4th Cir.2009), cert. denied, 559 U.S. 992 (2010). Accordingly, while a reviewing court must "accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff", Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009), the court still "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Simmons v. United Mortg. & Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir.2011) (internal quotations and citations omitted). In doing so, "the court need not accept the legal conclusions drawn from the facts, and

5

need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Monroe, 579 F.3d at 385–86 (quotation marks and alteration marks omitted). Rule 12(c) allows a party to move for judgment on the pleadings, "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). In reviewing a motion for judgment on the pleadings, the court applies "the same standard" as for motions made pursuant to Rule 12(b)(6). Burbach Broad Co. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002). When a party moves for judgment on the pleadings pursuant to Rule 12(c), the factual allegations of the complaint are taken as true, whereas those of the answer are taken as true only to the extent that they have not been denied or do not conflict with those in the complaint. Pledger v. North Carolina Dep't of Health and Human Services, 7 F. Supp. 2d 705, 707 (E.D.N.C. 1998).

The substantive law of the place where the act or omission occurred is to be applied in a FTCA action, which in this case is North Carolina. Cibula v. United States, 551 F.3d 316, 319 (4th Cir. 2009) (citing 28 U.S.C. § 1346(b)(1)). Although this action involves Plaintiff's medical treatment, ultimately, this case sounds in ordinary negligence, not medical malpractice. Simply put, Plaintiff's claim is not that BOP physicians failed to provide adequate medical treatment. Rather, Plaintiff contends that BOP employees failed to timely schedule a surgery that had already been approved, and that the resulting delay caused his cancer to spread. See Knowles, No. 5:12-CT-3212-F (E.D.N.C. March 20, 2014) (holding that claim sounded in ordinary negligence where Plaintiff was not scheduled for eye surgery in a timely fashion); Daniel v. United States, No. 5:11-CT-3067-BO, 2013 WL 393337, at *2 (E.D.N.C. Jan. 31, 2013) (holding that claim sounded in ordinary negligence where "Plaintiff never complained of the treatment he received from the medical specialist . . . [but rather] concerned the fact that the administration failed to follow the medical decisions concerning the need for treatment to prevent further and present damage to his

6

eyes."); Baker, 2013 WL 211254, at *4 (E.D.N.C. Jan. 18, 2013) (noting that the Fourth Circuit has not expressly addressed whether the independent contractor doctrine bars "mixed" cases, in which some of the plaintiff's allegations concern alleged negligent actions of government employees and that other courts have permitted mixed actions to proceed based on the alleged negligent acts of government employees). Moreover, North Carolina recognizes claims of ordinary negligence which bear some connection to medical treatment. See Allen v. Cnty. of Granville, 203 N.C. App. 365, 367, 691 S.E.2d 124, 126–27 (2010); Estate of Waters v. Jarman, 144 N.C. App. 98, 102, 547 S.E.2d 142, 145 (2001); cf. Littlepaige v. United States, No. 12-1367, 2013 WL 2501744, at *3–4 (4th Cir. June 12, 2013) (per curiam) (unpublished).

Thus, this claim should be analyzed under ordinary negligence principles. North Carolina law requires that "in order to prevail in a negligence action, [a plaintiff] must offer evidence of the essential elements of negligence: duty, breach of duty, proximate cause, and damages." Camalier v. Jeffries, 340 N.C. 699, 706, 460 S.E.2d 133, 136 (1995). "Actionable negligence is the failure to exercise the degree of care which a reasonable and prudent person would exercise under similar conditions. A defendant is liable for his negligence if the negligence is the proximate cause of injury to a person to whom the defendant is under a duty to use reasonable care." Hart v. Ivey, 332 N.C. 299, 305, 420 S.E.2d 174, 177-78 (1992) (internal citations omitted). Defendant concedes it owes a duty of care to Plaintiff. Def. Mem. [DE-16], pp. 16-17. Moreover, viewing the complaint in the light most favorable to the Plaintiff, as the court must at this stage, the court finds that Plaintiff has plausibly alleged breach of duty, proximate cause, and damages. Specifically, Plaintiff's complaint plausibly alleges that Defendants negligently failed to ensure that Plaintiff underwent an urgent medical procedure in a timely fashion, and that failure in treatment caused Plaintiff's cancer to spread. Accordingly, Plaintiff's motion to dismiss [DE-15] is DENIED without prejudice. See

7

Knowles, No. 5:12-CT-3212-F (E.D.N.C. March 20, 2014). The court emphasizes that Defendant may renew its argument that Plaintiff's claim lacks merit on a more developed record in a fully briefed motion for summary judgment. Finally, in this posture, Defendant's motion to stay [DE-21] is DENIED as moot.

### III. Conclusion

For the aforementioned reasons, Defendants' motion to dismiss [DE-15] is DENIED, and its motion to stay discovery pending the resolution of its motion to dismiss [DE-21] is DENIED as moot. In light of this disposition, this matter is referred to Magistrate Judge Robert B. Jones, Jr. for entry of an amended scheduling order.

SO ORDERED. This 20 day of March 2017.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge