# PLAINTIFF'S APPENDIX 29

November 19, 2017

## CONSULTANT REPORT OF JOHN F. CARR II, MD ON MICHAEL L. KREMBEL

I am a physician, board certified in Dermatology, and was in the private practice of dermatology in Durham North Carolina from 1974 to 2015. I am now retired. Before I retired, in addition to my private practice, I was a Consulting Associate at the Duke University Medical Center, where I saw patients, and I also assisted in the Dermatology Clinic of the VA Medical Center in Durham. I am a retired Colonel, Medical Corps, United States Army Reserve. I received the MD degree in 1968 from the University of Tennessee and did a rotating internship at the Roanoke Memorial Hospital in Roanoke, Virginia, 1968-1969. I completed a residency in dermatology at the Brooke Army Medical Center at Fort Sam Houston in San Antonio, Texas in 1974. I am a member of the American Academy of Dermatology and have been board certified in dermatology since 1975.

I have authored no publications in the past 10 years nor have I testified as an expert in any case, at trial or by deposition, in the past 4 years. The matter of compensation for my study and testimony, if needed, in this matter is as yet unresolved.

In 2015 I was asked to review the medical records of Michael L. Krembel, a federal prisoner then incarcerated at the Federal Medical Center in Butner, North Carolina. I reviewed those voluminous records from his treatment in the prison system and at the Duke University Medical Center. I believe I have reviewed all medical records provided to Krembel's counsel by the Federal Bureau of Prisons and the Department of Justice.

From the medical records, I learned that Krembel had been at Butner since June 2013 and had previously been at a federal prison at Fort Dix, New Jersey. His

1

medical history included a wound to his scalp resulting in a diagnosis of squamous cell carcinoma, for which he received treatment, including surgery, in New Jersey. The records reflected that Krembel was seen by Dr. Stanley Katz at Duke on July 8, 2013 and Dr. Katz wrote that:

> "[i]t is my opinion that the patient is a candidate for Mohs Micrographic surgery, not only for the obvious reasons as stated above but also because of the location and the increasing size over the last few months in an area of a flap repair. This would be the true standard of care, and frankly due to the patient's good health and ability to tolerate such a procedure, I know nothing else that would be adequate other than this treatment. The patient will return for a follow up in approximately one month for evaluation, assuming the Mohs surgery is done as soon as possible, which I again strongly recommend. This was discussed with the patient's family physician, Dr. Amy Rosenthal, and we both seemed to concur with this suggestion."

From my review of the record, I am in full agreement with Dr. Katz' recommendation of July 8, 2013.

The records reflect that on July 9, 2013, Krembel was seen by other health care providers, including Dr. Daniel O. Cuscela, a radiation oncologist, Dr. Amy Jo Rosenthal, Associate Professor of Medicine at Duke and a staff physician at FMC Butner, and a physician's assistant, Williams. All three were in agreement with Dr. Katz' recommendation for MOHS surgery.

On July 10, 2013, the FMC Butner Review Board approved the recommendation for MOHS surgery at Duke. A consultation with Dr. Jonathan

2

Lambert Cook, Professor of Dermatology and Assistant Professor of Surgery, and the primary MOHS surgeon at Duke, was then scheduled for October 15, 2013.

On that date Dr. Cook also agreed that MOHS surgery was necessary and that, due to the size of the probable wound, plastic surgery would also likely be required. Dr. Cook wrote "I agree with the prison staff physician that the MOHS surgical excision of this neoplasm would likely have the highest possibility of local tumor control" and that "[...] I would favor a MOHS surgical excision of this neoplasm [...][". Dr. Cook further wrote that "[g]iven the recurrent nature of this neoplasm, I have asked Dr. Erdmann (plastic surgeon) to consider seeing Mr. Krembel as soon as possible."

On October 23, 2013, the review board at FMC Butner approved the recommended plastic surgery reconstruction after the planned, approved MOHS surgery, as set forth in Dr. Cook's notes of October 15, 2013. Then, for reasons unknown to me, nothing further was scheduled or done until December 3, 2013, and for whatever reason the MOHS surgery was never scheduled. That delay, in my opinion, was critical, not up to any standard of care under the circumstances, and certainly not in the best interests of the patient. The urgency of the situation should have been apparent to all concerned by October 15, 2013. It appears from the medical records that every physician who had seen Krembel at that point was in full agreement with the treatment plan:

    A. MOHS surgery ASAP at Duke, by Dr. Cook

    B. Followed by plastic surgery reconstruction at Duke by Dr. Erdmann.

This, in my opinion, was a good game plan, so to speak, and it is more than a shame that it was not followed, to the detriment of the patient.

3

The medical reports reflect that by the time Krembel did receive treatment for his condition, despite the recommendation of the physicians at Duke, MOHS surgery was no longer considered feasible. Rather, a Duke radiation oncologist, Daniel Cuscela, M.D. wrote on a visit of December 3, 2013, regarding Krembel, that "[h]e was referred to Dermatology and felt that he needed a MOHS surgery and biopsy of this area. However the mass has been quite rapidly, exophytically and ulceratively with a crater and signs of an infectious process and drainage as well as necrosis [...] clinically he appears to be a T4 with invasion to the skull, and is not a surgical candidate at this point." The records further reflect that Krembel received no treatment for his squamous cell carcinoma until radiation therapy was begun at FMC Butner on December 10, 2013, more than five months after he was seen by Dr. Katz at Duke on July 8, 2013. In my opinion, that delay was inexcusable. Krembel should have had the MOHS surgery no later than October 2013, as Dr. Cook had recommended. Had he been under my care then, he would have had the surgery then. Why he was not scheduled for the surgery in October is unfathomable to me.

The medical records further reflect that a clinical note from Dr. Pushp K. Claudius, a medical officer at FMC Butner on October 21, 2014 that Krembel was:

> Evaluated by a Dermatologist on 07/08/2013 recommended for him to have MOHS surgery. This surgery was approved by the URC on 07/10/2013. Unfortunately, this surgical procedure was not scheduled at all, reason is not clear to me. This however resulted in the delay in care of his cancer treatment. His cancer progressed during this time.

The medical records further reflect that the cancer in his scalp was allowed to spread, due to the treatment delay, and Krembel contracted MERSA (Methicillin-

4

Resistent Staphylococcus Aureus infection), not unexpectedly. Because of the delay, the medical records reflect that Krembel has had to undergo more extensive, dangerous, life-threatening, painful and disfiguring series of procedures than otherwise would have been necessary, and that the cancer has spread, affecting other parts of Krembel's body, and negatively impacting his prognosis.

He became infected and suffered through prolonged and medical treatments that would not and should not have been necessary had the treatment plan at Duke been scheduled and followed.

I have seen photographs of Krembel's skull area taken in September 2017. They are remarkable and appalling. I am pleasantly surprised he is still alive. Clearly he has suffered permanent and disfiguring injuries to his head and scalp. He has a decreased life expectancy, and he will always be at risk of death to due a fall or blow to the head, as his skull defect is only protected with a thin skin graft.

In summary, it is my professional opinion, based upon my review of the medical records of Michael Krembel and the photographs of his skull, that he was not treated with any standard of care known to me, or prevalent anywhere in North Carolina, and it is a shame. This sad case is a textbook example of why clearly needed treatment should not be unreasonably delayed.

John F. Carr II, MD
4012 Colville Road
Durham, NC 27707

5