IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:16-CT-3018-FL

| | |
|---|---|
| MICHAEL L. KREMBEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on defendant's motion to dismiss for lack of jurisdiction, or in the alternative, for summary judgment (DE 36), and motion to seal (DE 41). The issues raised have been fully briefed and are ripe for adjudication. For the following reasons, the court grants defendant's alternative motion for summary judgment and motion to seal.

## STATEMENT OF THE CASE

On January 27, 2016, plaintiff, a federal inmate proceeding with counsel, filed this negligence action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680. Plaintiff asserts the United States breached its duty to ensure he received adequate medical care by negligently delaying treatment. Upon frivolity review, the court allowed the matter to proceed.[1]

On August 15, 2016, defendant filed a motion to dismiss pursuant to Federal Rules of Civil

---

[1] This case initially was assigned to a different district judge. On September 15, 2016, after frivolity review completed, this matter was reassigned to a former senior district judge. Then, upon his retirement, the case was reassigned on June 21, 2017, to the undersigned for all further proceedings.

Procedure 12(b)(1) and 12(b)(6). In this motion, defendant argued that plaintiff's claims were barred by the independent contractor exception to the FTCA. The court denied the motion to dismiss, but also invited defendant to renew this argument on summary judgment, noting that "a more fully developed record may reveal that [an independent contractor] was negligent and Defendant was not." (Order (DE 27) 5).

On March 15, 2018, defendant filed the instant motion, relying upon a memorandum of law, statement of material facts, and appendix including an affidavit from non-party Andrew Stock ("Stock"); portions of plaintiff's medical records; excerpts from plaintiff's deposition; and a copy of a contract between the Federal Bureau of Prisons ("BOP") and the University of Massachusetts Medical School ("UMASS").[2]

Plaintiff responded to the summary judgment motion, relying upon a memorandum of law, statement of material facts, and appendix including portions of plaintiff's medical records; photographs of plaintiff's injuries; BOP health care policies; a report from non-party Dr. John Carr ("Carr"); and excerpts from plaintiff's deposition.

Defendant replied, relying in support of summary judgment upon an appendix including an affidavit from non-party Christina Kelly; portions of plaintiff's medical records; the curriculum vitae and opinions of non-parties Dr. Jon C. Starr ("Starr") and Dr. Chauncey A. McHargue ("McHargue"); and excerpts from plaintiff's deposition.

## STATEMENT OF THE FACTS

The facts viewed in the light most favorable to plaintiff may be summarized as follows.

---

[2] Defendant moves to file this contract under seal. Plaintiff did not respond to this motion. The court has considered the motion under the governing standard, and determines that this document should be sealed. See, e.g., Doe v. Pub. Citizen, 749 F.3d 246, 271–73 (4th Cir. 2014).

Since June 2012, the Federal Correctional Complex in Butner, North Carolina ("Butner") has contracted with UMASS to provide medical care to its inmates. (Stock Aff. (DE 39-1) ¶ 4). Pursuant to this contract, UMASS provides physicians and other staff, both medical and non-medical, who deliver a wide variety of medical services to inmates at Butner. (Id.). UMASS provides these services through on-site clinic visits and community based referral. (Id. ¶ 5). Neither the BOP, nor officials at Butner, exercise control over the day-to-day medical judgment of UMASS contract physicians. (Id.). The BOP does maintain, however, the authority to approve or deny referrals for treatment and specific treatments recommended by UMASS contract physicians. (Id.).

Specifically, when an inmate at Butner seeks speciality medical care, he is examined first by BOP medical staff. (Id. ¶ 7). If BOP medical staff believes a speciality care appointment is required, he or she will enter a consultation request into the BOP's electronic medical records system ("BEMR"). (Id.). For speciality appointments that require a trip outside Butner, the request is forwarded to a BOP employee responsible for ensuring that the request is reviewed by Butner's Utilization Review Committee ("URC"). (Id.). After the URC approves a consultation request, it is then forwarded to the UMASS scheduling coordinator. (Id.). A UMASS scheduling coordinator is then responsible for scheduling, and notifying BOP medical staff of, the speciality appointment. (Id. ¶ 9). After UMASS notifies the BOP of the speciality appointment, prison officials then enter the appointment information in BEMR, including the time and date of the appointment. (Id.). UMASS is responsible for the re-scheduling or cancellation of any off-site speciality appointments. (Id.). Similarly, when an appointment is rescheduled or canceled, UMASS is responsible for notifying the BOP of the new appointment. (Id.).

UMASS selects its own scheduling coordinator. (Id. ¶ 6). This coordinator is responsible

for scheduling all offsite medical appointments recommended by UMASS and approved by the BOP. (Id.). The scheduling coordinator is compensated by UMASS, not the United States. (Id.). Furthermore, the BOP does not oversee UMASS's scheduling process. (Id. ¶ 10). After the BOP refers inmates to UMASS for off-site speciality care, the UMASS scheduling coordinator is responsible for balancing the urgency of the inmate's medical needs against the availability of off-site specialists. (Id.). Likewise, the UMASS scheduling coordinator is responsible for notifying Butner medical records staff of the scheduling, re-scheduling, or cancellation of any off-site specialist appointments. (Id.). To this end, the contract between the BOP and UMASS charges UMASS with establishing administrative systems to ensure that the process runs smoothly. (Id.).

On or about June 6, 2013, plaintiff was transferred from the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix") to Butner. (Compl. (DE-1) ¶ 6). Plaintiff has been diagnosed with squamous cell carcinoma, and received treatment for that condition, including three surgeries, while he was incarcerated at FCI Fort Dix. (Id. ¶ 7); (Def. Ex. (DE 39-2) 17).

When plaintiff arrived at Butner, no active disease was present. (Def. Ex. (DE 39-2) 9). However, BOP medical staff noted that the likelihood of recurrence was high. (Id.). Eventually, plaintiff developed a new scalp lesion. (Id.). Dr. Stanley Katz ("Katz")[3] examined plaintiff, and on July 8, 2013, indicated "[i]t is my strong opinion that the patient is a candidate for Mohs micrographic surgery . . . This would be the true standard of care, and frankly due to the patient's good health and ability to tolerate such a procedure, I know nothing else that would be adequate other than this treatment." (Id. ¶ 10). Dr. Katz "strongly recommended" that Mohs surgery be performed "as soon as possible." (Id.).

On July 10, 2013 the URC approved a surgical consultation for plaintiff. (Id. ¶ 14). The

---

[3] Dr. Katz contracts with the BOP through UMASS and is not a BOP employee. (Stock Aff. (DE 39-1) ¶ 13).

4

URC approval noted the urgency of the consultation, indicating that it should be scheduled within one week. (Def. Ex. (DE 39-2) 23). That same day, BOP officials submitted the approved consult request to UMASS via fax, and UMASS received the fax. (Id. at 24). UMASS scheduled plaintiff's surgery consultation for October 15, 2013. (Id. at 11, 84).

Dr. Lambert Cook ("Cook")[4], a surgeon at Duke University Medical Center ("DUMC"), consulted with plaintiff on October 15, 2013. (Compl. (DE 1) ¶ 15). Following the October 15, 2013 consultation, Dr. Cook also agreed that Mohs surgery was necessary. (Id. ¶ 16.). He further opined that, given the size of the probable wound, plastic surgery would also be required. Id. Dr. Cook stated that he would consult a plastic surgeon to evaluate plaintiff for a "preoperative consultation so that his appropriateness for a more involved surgical procedure can be discussed." (Def. Ex. (DE 39-3) 9). Finally, Dr. Cook stated he would see plaintiff "in the coming weeks for coordinated care with [the plastic surgeon]." (Id.).

On October 16, 2013, a plastic surgery consultation request was submitted for URC approval. (Def. Ex. (DE 39-2) 26-27). The URC approved the plastic surgery consultation on October 23, 2013, and faxed the approval to UMASS the next day. (Id. at 43-45). The fax recommended scheduling the plastic surgery consultation within 2-3 weeks. (Id. at 43-44). UMASS received the fax. (Id. at 45). However, despite notification from the BOP, UMASS failed to schedule the plastic surgery consultation. (See Compl. (DE 1) ¶ 19).

On November 30, 2013, plaintiff notified BOP staff that it had been almost five months since Dr. Katz recommended Mohs surgery, and he had yet to see a plastic surgeon. (Def. Ex. (DE 39-2) 46). Plaintiff also stated that he was experiencing worsening symptoms. (Id.). In response, Dr.

---

[4] Dr. Cook contracts with the BOP through UMASS and is not a BOP employee. (Stock Aff. (DE 39-1) ¶ 13).

5

Daniel Cuscela ("Cuscela")[5], a DUMC radiation oncologist, examined plaintiff. (Id. at 47-49). Dr. Cuscela noted "the mass has . . . [grown] quite rapidly, exophytically and ulceratively with a crater and signs of an infectious process and drainage as well as necrosis […] clinically he . . . is not a surgical candidate at this point." (Id. at 47). Accordingly, Dr. Cuscela cancelled plaintiff's plastic surgery and recommended radiation therapy instead. (Id. at 47-49).

Plaintiff began radiation treatment in December 2013, and completed his last treatment on January 8, 2014. (Def. Ex. (DE 39-2) 49). After radiation treatment, plaintiff "completely responded with no evidence of tumor." (Id.). However, it was also noted that plaintiff's scalp wound would "not ever heal over completely." (Id.).

## DISCUSSION

A.  Standard of Review

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the petitioner bears the burden of showing that federal jurisdiction is appropriate when challenged by respondents. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When the Rule 12(b)(1) motion attacks the complaint as failing to state facts upon which subject matter jurisdiction may be based, the facts in the complaint are assumed to be true and the petitioner is afforded the same protections he or she would receive under a Rule 12(b)(6) motion. Adams, 697 F.2d at 1219. The Rule 12(b)(1) motion may attack alternatively the existence of subject matter jurisdiction in fact, apart from the complaint. Id. This type of attack is used when a court's limited jurisdiction precludes hearing the case brought. Id. Because the court's power to hear the case is at issue in a Rule 12(b)(1) motion, the court is free to weigh the evidence to determine the existence of jurisdiction. Adams, 697 F.2d at 1219.

---

[5] Dr. Cuscela is also a independent contractor, not a BOP employee. (Stock Aff. (DE 39-1) ¶ 13).

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as

a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B.  Analysis

Under the FTCA, the United States waives sovereign immunity for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 2675(a). A prisoner "can sue under the [FTCA] to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 150 (1963) (footnote omitted). The waiver is limited, however, to acts of governmental employees, and does not extend to acts of independent contractors. See Logue v. United States, 412 U.S. 521, 526–30 (1973); Williams v. United States, 50 F.3d 299, 305–06 (4th Cir. 1995); Wood v. Standard Prods. Co., 671 F.2d 825, 829 (4th Cir. 1982). As a waiver of sovereign immunity, the FTCA is to be strictly construed and all ambiguities must be resolved in favor of the sovereign. Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996). Consequently, the independent contractor exception to the waiver of sovereign immunity has been construed broadly. Id.

Whether a person is a contractor or a federal employee for purposes of the independent contractor exception is determined under federal law. Id. (citing Logue, 412 U.S. at 528). When interpreting the FTCA, the Fourth Circuit has made clear that the United States will not be liable for negligent acts of independent contractors unless the United States supervised the "day-to-day

8

operations" of the contractors. Williams, 50 F.3d at 306 (internal citations omitted). "Stated differently, a court must consider whether the government exercises day-to-day control over the performance of the work under the contract." Berkman v. United States, 957 F.2d 108, 112 (4th Cir. 1992). Establishing standards, supplying financial support, providing advice and oversight, and inspecting and approving final work—all in order to ensure that federal funds are not used on unauthorized expenditures—does not give the federal government the "day-to-day control" necessary for the United States to be held liable for the contractors' actions. See United States v. Orleans, 425 U.S. 807, 818 (1976). The plaintiff bears the burden of showing a waiver of sovereign immunity and that none of the FTCA exceptions apply. See Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). "[T]he critical factor in making th[e independent contractor] determination is the authority" of the federal government "to control the detailed physical performance of the contractor." Logue, 412 U.S. at 527-28.

Defendants previously raised the independent contractor exception to the FTCA as a defense in this action. The court denied defendant's previous motion to dismiss, noting that plaintiff plausibly alleged BOP negligence. However, the court also specifically invited defendant to present upon summary judgment evidence demonstrating the contract between the BOP and UMASS. Defendant did so, and this court now concludes that the independent contractor exception applies to plaintiff's claim.

Plaintiff alleges that a delay in scheduling surgical consultations harmed him. However, the record clearly indicates that UMASS, an independent contractor, was responsible for any delays. Plaintiff has not presented any evidence indicating that the United States exercised day-to-day control over UMASS, and, therefore, plaintiff has not met his burden of showing a waiver of sovereign immunity. On the contrary, the record demonstrates that the United States contracts with

9

UMASS to schedule off-site speciality medical care. The United States does not exercise any control over UMASS's administration of these scheduling duties, nor does it compensate the scheduling coordinator. When outside specialists made treatment recommendations for plaintiff, the URC approved the recommended treatment and promptly forwarded that approval to UMASS. Any delay in plaintiff's treatment thus is attributable to UMASS, not the BOP. See, e.g., Brown v. United States, No. 1:15-CV-0224-TWP-DML, 2017 WL 4155218, at *13 (S.D. Ind. Sept. 19, 2017) (noting delay to see neurosurgeon was not attributable to the United States because "BOP medical staff does not schedule consultations with outside specialists. Rather, a third party independent contractor … schedules those appointments"), aff'd, 737 F. App'x 777 (7th Cir. 2018).

In response, plaintiff relies on Knowles v. United States, another FTCA case where a different district court judge in this court declined to apply the independent contractor exception. See No. 5:12-CT-3212-F, 2015 WL 13214314, at *4 (E.D.N.C. Dec. 14, 2015). However, this court is not bound by the decision of other district court judges. Furthermore, Knowles is distinguishable. In Knowles, the court determined "that the independent contractor exception does not apply because Plaintiff has established by a preponderance of the evidence that BOP officials themselves were negligent, separate from any conduct by independent contractors." Id. at *5. Here, however, the record clearly indicates the BOP promptly notified UMASS of plaintiff's approved consultations, and that UMASS was the sole cause for any delay in treatment.

Furthermore, portions of plaintiff's response argue that defendant violated plaintiff's constitutional rights. (See, e.g., Pl. Mem. (DE 44) 8). However, plaintiff is pursuing a tort claim under the FTCA, not a constitutional claim under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). As the Fourth Circuit has explained, utilization of the FTCA rather than a

Bivens action under is a calculated risk:

> In pursuing an intentional tort claim against a federal law enforcement officer, a prospective plaintiff may pursue two alternative avenues of relief. She may either pursue a constitutional claim against the officer directly under the Constitution, as recognized in Bivens, or she may file a tort claim under the FTCA. Should a plaintiff pursue the latter course, she runs the risk that her constitutional claim will be subject to the FTCA's "judgment bar" provision.

Unus v. Kane, 565 F.3d 103, 122 (4th Cir. 2009).[6] In sum, any constitutional claim, including any argument that BOP officials were deliberately indifferent to plaintiff's serious medical needs, must be pursued in a separate complaint under Bivens[7], and is not relevant to the instant analysis. See FDIC v. Meyer, 510 U.S. 471, 477-78 (1994) ("[T]he United States simply has not rendered itself liable under [the FTCA] for constitutional tort claims.").

Finally, plaintiff's suggestion that the United States was negligent in contracting with UMASS to provide medical care in the first instance is barred by the discretionary function exception to the FTCA. Pursuant to the discretionary function exception, the United States is not liable under the FTCA for "[a]ny claim based upon . . . the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "The discretionary function exception 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" Holbrook v. United States, 673 F.3d 341, 345 (4th

---

[6] The court notes that the judgment bar is not triggered, however, by every FTCA dismissal. Courts consistently hold that the judgment bar does not apply when claims in an FTCA case are dismissed because they could not be pursued under the FTCA in the first place. See, e.g., Simmons v. Himmelreich, 136 S.Ct. 1843, 1850 (2016) ("The judgment bar provision ... does not apply to the categories of claims in the 'Exceptions' sections of the FTCA."); Berryman v. Mullen, No. 1:16CV47, 2018 WL 1247878, at *4 (N.D.W. Va. Mar. 9, 2018).

[7] Plaintiff's complaint only names the United States as a defendant and not any federal law enforcement officer or other BOP official.

Cir. 2012) (quoting United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984)).

Here, the BOP's decision to contract with UMASS to provide and schedule off-site specialist medical care, as well as the decisions relating to the accompanying terms of that contract, were discretionary functions that except this case from the waiver of sovereign immunity under the FTCA. See Williams, 50 F.3d at 310 ("The decision to hire an independent contractor to render services for the United States is precisely the type of decision that the [discretionary function] exception is designed to shield from liability."); see, e.g., Gottlieb v. United States, 624 F. Supp. 2d 1011, 1023–24 (S.D. Ind. 2008) ("The BOP decision to contract with . . . [an independent contractor] for certain medical services, including specialized and emergent care, involved the type of policy-based, and therefore discretionary, decisions protected by the discretionary function exception"); Johnson v. United States, No. CIV.A. 4:05CV40, 2006 WL 572312, at *5 (E.D. Va. Mar. 7, 2006) ("[T]he decision to contract with . . . [an independent contractor] to house, monitor, and provide medical care to federal prisoners falls within the discretionary function exception as it involves administrative decisions grounded in social, economic, and political policy") (quotation omitted)).

For these reasons, the independent contractor and discretionary function exceptions to the FTCA apply to plaintiff's negligence claim against the United States related to the delay in his medical care. Williams, 50 F.3d at 306; see also Johnson v. United States, No. 5:17-CV-00012, 2018 WL 4169141, at *2 (W.D. Va. Aug. 30, 2018) (dismissing FTCA claim based on negligent delay in medical care because of independent contractor exception); Johnson, 2006 WL 572312, at *6 ("the court rejects any potential argument that the [United States] was negligent in failing to provide medical care to [plaintiff] even though the [United States] contracted with . . . [an

independent contractor] to provide medical care for him"); Phillips v. Fed. Bureau of Prisons, 271 F. Supp. 2d 97, 101 (D.D.C. 2003) (dismissing FTCA wrongful death claim because of independent contractor exception). Because these exceptions apply, the court lacks jurisdiction to hear plaintiff's claim. See Williams, 50 F.3d. at 305.

## CONCLUSION

Based on the foregoing, the court GRANTS defendant's motion for summary judgment (DE 36), and motion to seal (DE 41). The court DIRECTS the clerk to close this case.

SO ORDERED, this the 29th day of March, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge